IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-00388-D-9

| | |
|---|---|
| **United States of America**, v. **David Earl Seawell, Jr.**, Defendant. | **Order** |

In August 2020, a grand jury indicted Defendant David Earl Seawell, Jr. on four drug-related charges. Indictment at 1, 5, 6, D.E. 10. After his arrest two months later, Seawell appeared for his detention hearing. D.E. 123. But instead of arguing for his release, Seawell chose to waive his detention hearing. Waiver of Detention Hr'g., D.E. 124. As a result, the court ordered that Seawell remain in custody until his trial. Detention Order, D.E. 125.

Seawell now asks the court to reopen his detention hearing. Mot. to Reopen, D.E. 130. His request relies on the Fourth Circuit's opinion in *United States* v. *Clark*, 865 F.2d 1433 (4th Cr. 1989) (en banc). In *Clark*, the Court of Appeals construed a defendant's decision to waive a detention hearing "as a request for an indefinite continuance for good cause." *Id.* at 1437. Thus, the appellate court said, a defendant who had waived his detention hearing could obtain a hearing simply by requesting one. *Id.*

Despite *Clark*'s language, the court will deny Seawell's motion. The language he relies on is dicta and so it is not binding on this court. While lower courts will often give substantial weight to dicta in otherwise controlling opinions, there is a compelling reason not to do so here. *Clark*'s indefinite continuance language conflicts with the text of the Bail Reform Act. So if Seawell wishes to reopen his detention hearing, he must do so through one of the avenues the Act provides.

## I. Discussion

The Bail Reform Act of 1984 governs proceedings related to a defendant's detention before trial and sentencing. 18 U.S.C. § 3141 *et seq*. Under the Act, the United States may seek a defendant's detention before trial if he committed one of a specified set of offenses, poses a serious risk of flight, or a serious risk exists that the defendant will tamper with a witness or otherwise obstruct justice. 18 U.S.C. § 3142(f). If the United States requests that the court detain a defendant, he is entitled to a hearing on that motion. *Id*.

If the court detains a defendant, the Act limits his ability to have the court revisit its decision. The court may only reopen a detention hearing if the defendant can establish two things. First, the defendant must show "that information exists that was not known to the movant at the time of the hearing[.]" *Id.* And second, that the new information "has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.*

Seawell claims that despite the statutory language, Fourth Circuit precedent requires that the court revisit his detention without first asking if he has learned of new, material information. His argument depends on the Fourth Circuit's en banc decision in *United States* v. *Clark*. That opinion explained that a defendant's waiver of his right to a detention hearing is more akin to a request for an indefinite continuance, so he can obtain a hearing at any point just by asking for one.

The undersigned has applied *Clark* in the past to allow a defendant to reopen their detention hearing without complying with § 3142(f). Order, *United States* v. *Simon*, 7:19-CR-00074-FL-1 (E.D.N.C. July 13, 2020), D.E. 33; Order, *United States* v. *Turner*, 5:19-CR-00464-BO (E.D.N.C. May 4, 2020), D.E. 24. But those orders noted the tension between *Clark*'s language and the

language of the Bail Reform Act. Order at 2–3, *Simon*, 7:19-CR-00074-FL-1, D.E. 33; Order at 2–3, *Turner*, 5:19-CR-00464-BO, D.E. 24. After more reflection, however, the court has determined that the relevant language is dicta and that rather than apply that language, it must follow the text of the Bail Reform Act.

    **A.**    **Overview of** *United States* **v.** *Clark*

In *Clark*, the Fourth Circuit considered the appropriate remedy when a defendant does not receive a timely detention hearing. 865 F.2d at 1435. The case began in this court, where Clark and his co-defendant at first agreed to detention because of threats to their safety. *Id.* But after spending a week in pretrial detention, they asked to reopen their detention hearing. *Id.* Eight days later, a magistrate judge held a hearing and determined that they should remain detained pending trial. *Id.* Immediately after the hearing, the defendants once again asked the magistrate judge for a chance to present new evidence. *Id.* Although the magistrate judge agreed to reopen the hearing a second time, the defendants could not persuade him to change his ruling. *Id.*

The defendants then asked a district judge to review the magistrate judge's detention order. *Id.* The district court upheld the detention order and denied a "subsequent motion to vacate the detention order on the ground that a timely detention hearing was not held." *Id.* An appeal followed. *Id.*

A divided panel of the Fourth Circuit reversed the district court's order. *United States* v. *Clark*, 850 F.2d 690, 1988 WL 68431 (4th Cir. 1988) (unpublished table opinion). The majority held that the court's failure to hold a detention hearing at the time of the defendants' initial appearance or within 5 days thereafter was "a flat violation of the critical time requirements of" the Bail Reform Act. *Id.* at *1. This was true, in the majority's opinion, even though the defendants at first waived their detention hearings. *Id.* The defendants lacked the ability, the panel majority

3

explained, to waive the Act's timing requirements or their right to a hearing. *Id.* at *4. Given that the detention order was "fatally flawed[,]" the panel ordered that the district court promptly release the defendants on conditions. *Id.* at *2.

The full court decided to hear the case en banc and affirm the district court's decision. 865 F.2d at 1435. The en banc opinion explained that since defendants can waive various fundamental constitutional rights like "the right to counsel or the right to a jury trial" they "surely" had the ability to waive procedural statutory rights. *Id.* at 1437 (citations omitted). So the court held that "both the time requirements and the detention hearing itself provided for in section 3142 are waivable." *Id.* And, the court added, when a defendant does not receive a timely hearing, "automatic release is not the appropriate remedy." *Id.* The opinion also concluded that the district court reached the appropriate decision on the merits about the defendants' detention. *Id.*

Along with these issues, the en banc opinion discussed the durability of a detention hearing waiver. The Court believed that a defendant's waiver of his right to a detention hearing was "not an absolute, final relinquishment of all rights under the Bail Reform Act." 865 F.2d 1433, 1437 (4th Cir. 1989) (en banc). Explaining that "the requirements of section 3142 must ... be applied with common sense," the Fourth Circuit said that the court should view a defendant's waiver "as a request for an indefinite continuance for good cause." *Clark*, 865 F.2d at 1437. Thus, the Court of Appeals concluded, "[w]hen a defendant who has waived an immediate detention hearing later requests a hearing, one must be held within the procedural requirements of section 3142." *Id*. The opinion did not address whether or how its position complied with the Act's language.

So if *Clark*'s indefinite continuance language is binding, then Seawell may reopen his detention hearing whenever he likes. But if it is not, then he must first satisfy the Bail Reform Act's requirements before the court can revisit its detention order.

4

### B. Precedential Effect of *Clark*'s Indefinite Continuance Language

To resolve this issue, the court must determine what portions of *Clark* are binding, and what portions are not. Brian A. Garner, et al., *The Law of Judicial Precedent* 44 (2016) ("Not all text within a judicial decision serves as precedent."). In assessing the precedential effect of an opinion, a lower court must distinguish between the portions of an opinion that make up its holding and *ratio decidendi*, which are binding, and the portion that constitutes dicta, which are not. *See U.S. Nat. Bank of Or.* v. *Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 463 n.11 (1993); *Alexander* v. *Sandoval*, 532 U.S. 275, 282 (2001) (explaining that courts are "bound by holdings, not language."); *United States* v. *Shepperson*, 739 F.3d 176, 180 n.2 (4th Cir. 2014) ("This language, however, is non-binding dicta, as it was unrelated to the *ratio decidendi* of that case, and furthermore, was not a point raised by that defendant.").

While there is still some dispute over the exact contours of these terms, they generally break down as follows. *See, e.g.*, *Law of Judicial Precedent* 44–52.

The holding is the "court's determination of a matter of law pivotal to its decision" or "a principle drawn from such a decision." Black's Law Dictionary Holding (11th ed. 2019). Closely related to an opinion's holding is its *ratio decidendi*. This concept includes "the principle which explains why certain facts in a certain procedural context compel a certain conclusion[.]" *In re Burns*, 974 F.2d 1064, 1068 (9th Cir. 1992). It "is not necessarily the same as the literal meaning of the words used to articulate the principle in the particular case." *Id.*

On the other side of the ledger is an opinion's dicta. Language qualifies as dicta if it "could have been deleted without seriously impairing the analytical foundations of the holding[.]" *Pittston Co.* v. *United States*, 199 F.3d 694, 703 (4th Cir. 1999). Courts have recognized that dicta are not

5

binding on lower courts. *United States* v. *Pasquantino*, 336 F.3d 321, 329 (4th Cir. 2003) (en banc) (explaining that dicta "cannot serve as a source of binding authority in American jurisprudence.").

The language in the en banc decision in *Clark* that a defendant's waiver of his right to a detention hearing is merely an indefinite continuance falls comfortably within the category of dicta. There were three questions before the district court that led to the appeal:

- Did the defendants receive a timely detention hearing?
- If they did not receive a timely hearing, what was the appropriate remedy?
- Did the district court properly detain the defendants?

*Clark*, 865 F.2d at 1435.

When the case reached the appellate level, the panel decision turned on the timeliness issue and the remedy for violating the Act's timing provisions. *Id.* The en banc opinion's indefinite continuance language played no role in resolving these points. If it vanished from the opinion, it would not affect the court's conclusions about whether a defendant may waive the Act's requirements, the appropriate remedy for an untimely hearing, or whether the district court correctly detained the defendants. Since the language was not material to the opinion's holding or its reasoning it is dicta. *See Lennear* v. *Wilson*, 937 F.3d 257, 273 (4th Cir. 2019).

### C. Whether to Depart from *Clark*'s Dicta

But determining that the indefinite continuance language is dicta does not, by itself, strip it of all its legal force. Courts will often give dicta controlling weight. *See, e.g.*, *Manning* v. *Caldwell*, 930 F.3d 264, 281 (4th Cir. 2019). This case, however, presents a circumstance where it is inappropriate to do so. And that is because *Clark*'s indefinite continuance language conflicts with the Bail Reform Act's text. Given the role of the courts in our system of government, when confronted with such a conflict, federal courts must apply the text of the statute.

6

Congress established the current pretrial detention system when it enacted the Bail Reform Act of 1984. Among the items discussed in the Act is the standard for obtaining continuances–indefinite or otherwise. It gives the United States and the defendant the right to a 3- or 5-day continuance, respectively, without making any further showing. 18 U.S.C. § 3142(f). But if a party wants a longer delay, they must provide good cause before they are entitled to it. *Id.* So Congress allowed a court to grant an indefinite continuance so long as a defendant showed there was good cause to do so.[1] *Clark*'s indefinite continuance language, which does not require a showing of good cause, conflicts with this portion of the Act.

The Act also explains when a defendant has a right to have the court revisit its detention decision. It allows a judge to reopen a detention hearing "at any time before trial" if the defendant can show two things. 18 U.S.C. § 3142(f). To begin with the defendant must present the court with information that he did not know about at the time of his initial detention hearing. *Id.* And the new information must have "material bearing on the" question of the defendant's releaseability. *Id.* Giving controlling weight to *Clark*'s indefinite continuance language would add an additional method to reopen a detention hearing that is not included in the Act's text.

So when dicta conflicts with statutory text, which one controls? Given that federal courts are interpreters and not drafters of law, the text of the statute must prevail.

In our system of government, "the Constitution identifies three types of governmental power and, in the Vesting Clauses, commits them to three branches of Government." *Dep't of Transp.* v. *Ass'n of Am. R.R.*, 575 U.S. 43, 67 (Thomas, J., concurring). This divvying up of

---

[1] The BRA's text reveals an intent to have courts resolve question about pretrial detention promptly. So not every case will be an appropriate candidate for an indefinite continuance. In fact, it is likely that very few cases will be. For example, it is unlikely that an inability to locate a third-party custodian within the timeframe provided in the BRA would justify an indefinite continuance. But a defendant who is serving a sentence in state or federal court with a release date well in the future has a stronger case for an indefinite continuance.

7

governmental power is not just a way to share the substantial work involved in running a country. It is an essential tool to preserve liberty. *See The Federalist* No. 47 (James Madison) (Gideon Ed. 2001) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny."). Given the importance of the separation of powers, responsible members of government must always consider whether they are acting within the bounds of their constitutional authority.

When it comes to the judicial branch, the People have imbued the Supreme Courts and lower federal courts with "the judicial Power of the United States." U.S. Const. art. III § 1. This power is a limited one, focusing on "interpreting and applying" the laws enacted by the People's representatives. *Massachusetts* v. *Mellon*, 262 U.S. 447, 488 (1923).

The judicial power differs from the legislative power granted to Congress in the Constitution. *See* U.S. Const. Art. I, § 1 (vesting Congress with "[a]ll legislative powers herein granted"). The legislative power is broad, giving Congress the ability to address whatever matters it deems appropriate within the bounds set by the Constitution. *See Gibbons* v. *Ogden*, 22 U.S. 1, 197, 9 Wheat. 1 (1824).

The distinction between the legislative and judicial powers directs the way that courts address the matters that come before them. In the judicial branch, "[o]ur charge is to give effect to the law Congress enacted." *Lewis* v. *City of Chicago, Ill.*, 560 U.S. 205, 217 (2010). And we do this by "carefully attending to the words it chose rather than replacing them with others of our own." *Murphy* v. *Smith*, 138 S. Ct. 784, 788 (2018).

Nor can courts pick up the drafting process where Congress left off and add language to a statute. *See Iselin* v. *United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function."). Engaging in this type of "[a]textual judicial supplementation is particularly

8

inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske* v. *Klemm*, 140 S. Ct. 355, 361 (2019). In recognition of this limitation on the judicial power it has become "a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Id.* at 360–61 (quoting Antonin G. Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012)).

These limitations remain in place even if a judge finds the outcome required by the law to be unwise or unpalatable. *Azar* v. *Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019) ("[C]ourts aren't free to rewrite clear statutes under the banner of our own policy concerns.").

So the Constitution prohibits courts from modifying or augmenting a properly enacted law. This limitation on the judicial power compels the conclusion that when a court encounters dictum that conflicts with a statute, it must set aside the non-binding language and apply the law as written.

The Fourth Circuit has employed this principle in the past. *See In re Bateman*, 515 F.3d 272, 282 (4th Cir. 2008) (explaining that despite the "considerable persuasive value" of Supreme Court dicta the court would "nonetheless adopt the position that we believe flows from the plain terms of" the statute). As have other courts. *See United States* v. *Collins*, 366 F. App'x 640, 641 (6th Cir. 2010) ("[H]owever, the dicta conflicts with the terms of the statute. The terms of the statute control."); *Parker* v. *Conway*, 581 F.3d 198, 205 n.7 (3d Cir. 2009) (declining to follow dicta from out-of-circuit cases because of a conflict with the plain text of a statute); *United States* v. *Ricks*, 5 F.3d 48, 50 (3d Cir. 1993) (rejecting dicta from an earlier opinion because, among other things, "it conflicts with the plain text of the Guidelines"); *United States* v. *Donelson*, 695 F.2d 583, 588 (D.C. Cir. 1982) (Scalia, J.) (rejecting an argument based on dicta because it "is in conflict with all decisions on the subject as well as with the text of the statute itself.").

As noted above, *Clark*'s indefinite continuance language conflicts with and adds to the Bail Reform Act's text. In such a circumstance, the court must apply the statutory language, not the dicta.

## II. Conclusion

The court determines that *Clark*'s indefinite continuance language is not the type of dicta that is entitled to controlling weight. Thus, Seawell cannot rely on it to reopen his detention hearing. What is left of his motion does not satisfy the Bail Reform Act's requirements to reopen a detention hearing,[2] so the court will deny Seawell's motion. D.E. 130. If Seawell believes that he has a right to reopen his detention hearing under 18 U.S.C. § 3142(f) or temporary release under 18 U.S.C. § 3142(i) he may file another motion seeking that relief.

Dated: March 11, 2021

_____
Robert T. Numbers, II
United States Magistrate Judge

---

[2] Seawell's motion mentions that his mother is now willing to be his third-party custodian. The motion does not explain why he did not know this information before he waived his detention hearing or how it impacts his releasability. But given the motion's reliance on *Clark*, these omissions are understandable.